THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BRIAN SCHULTZ, EMILY JOY SCHULTZ, and JOANNA SHEELEY | ) ) ) | |
| *Plaintiff,* | ) ) | No. 24 C 2343 |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| GREE USA, INC., GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, HONG KONG GREE ELECTRIC APPLIANCE SALES, LTD., MJC AMERICA, LTD. d/b/a SOLEUS INTERNATIONAL, INC., and MJC AMERICA HOLDINGS CO., INC, | ) ) ) ) ) ) | |
| *Defendant.* | | |

**MEMORANDUM OPINION AND ORDER**

In 2022, Plaintiffs Robert Schultz, Emily Schultz, and Joanna Sheeley were in their shared home when their dehumidifier caught fire. Now, they are suing the product designers, manufacturers, and distributors. (Dkt. 1). In this suit against Gree USA, Inc. ("Gree USA"), Gree Electric Appliances, Inc. of Zhuhai ("Gree China"), Hong Kong Gree Electric Appliance Sales, Ltd. ("Gree Hong Kong"), MJC America, Ltd. (d/b/a Soleus International, Inc.), and MJC America Holdings Co., Inc., Plaintiffs allege various causes of action including common law fraud, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), and strict liability.

Defendants now move to dismiss the common law and statutory fraud claims (Counts V, VI, and IX) and to strike the claims for punitive and exemplary damages. (Dkt. 22). For the reasons discussed below, Defendants' Motion [22] is granted with leave to refile.

1

**BACKGROUND**

I.  **The Defendants**

Defendants Gree China and Gree Hong Kong are Chinese household goods manufacturers. (Dkt. 1 ¶¶ 36–39). Gree Hong Kong is a subsidiary of Gree China. Between 2007 and 2013, both manufactured and exported dehumidifiers to various places for sale, including the United States. (*Id.*). Gree USA, which is based in California and a subsidiary of Gree Hong Kong, imported and sold these dehumidifiers to retailers between 2010 and 2013. (*Id.*). MJC America and MJC America Holding are two privately held California-based manufacturers, importers, and distributors of home comfort products, which, in 2010, entered into a joint venture agreement with Gree China to promote the sale of Gree China's products throughout the United States. (*Id.* at ¶ 41). For the purposes of the motion, the Court refers to them collectively as "MJC."

II.  **The Allegations**

Between, 2007 and 2013, Defendants sold more than two million defective dehumidifiers in the United States, including Illinois. (*Id.* at ¶ 60). By July 2012, Defendants each had information that some of their dehumidifiers were defective and could spontaneously catch fire. (*Id.* at ¶ 168). Despite knowing their products were dangerous, Defendants waited until September 2013 to report their concerns to the Consumer Product Safety Commission (CPSC)—the federal agency responsible for protecting consumers from dangerous consumer products. (*Id.* at ¶ 77); 15 U.S.C § 2064(b).

The dehumidifiers were dangerous because they contained substandard plastic parts, which did not meet industry flammability standards, as required by the Consumer Product Safety Act (CPSA). (*Id.* at ¶¶ 64–65). These deficient dehumidifiers were prone to overheating and catching on fire. Notwithstanding these hazards, Gree China and Gree Hong Kong represented to

Underwriter's Laboratory ("UL"), the organization responsible for certifying and labeling consumer products as safe, pursuant to the CPSA, that their dehumidifiers met national safety standards. (*Id.* at ¶ 94). Officials at Gree USA also represented to its retailers that the substandard dehumidifiers were safe. (*Id.* at ¶ 142). This resulted in UL improperly certifying the defective dehumidifiers. Without the UL certification, American retailers could not have purchased the dehumidifiers. (*Id.* at ¶ 98). Consequently, retailers and consumers in the United States believed Defendants had designed and manufactured their dehumidifiers in compliance with UL standards. (*Id.* at ¶ 87). In 2013, a year after discovering that the dehumidifiers were prone to catching fire, Defendants announced a series of product recalls. (*Id.* at ¶ 79).

In 2016, Gree China, Gree Hong Kong, and Gree USA agreed to pay a civil penalty of over $15 million for failing to promptly notify the CPSC of the defects in the dehumidifiers and misrepresenting that the dehumidifiers were UL compliant. (*Id.* at ¶ 198). In 2021, the same three Gree entities were criminally indicted for the safety standard cover-up. (*Id.* at ¶ 111)

At some point, though it is not clear when, Plaintiffs acquired a defective Gree dehumidifier for use in their home. (*Id.* at ¶¶ 80–81). Then, on the evening of March 25, 2022, Plaintiffs' dehumidifier caught fire. (Dkt. 24 ¶ 5). Though the details are unclear, as a result of the fire, Robert and Emily allege that they suffered physical injuries as well as damages to personal property. (Dkt. 1 ¶ 213). Joanna claims that she suffered loss of society, companionship, sexual relationship, and services which Robert had provided. (*Id.* at ¶ 214). The Office of the Illinois State Fire Marshall investigated the cause of the fire and concluded that it was likely a direct result of the Defendant-manufactured dehumidifier. (*Id.* at ¶¶ 178–79).

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

In addition, for claims "rest[ing] on allegations of deceptive conduct," Federal Rule of Civil Procedure 9(b) requires the plaintiff to "plead with particularity the circumstances constituting fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)); Fed. R. Civ. P. 9(b); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) ("Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts."). In other words, the complaint must describe the "who, what, when, where, and how of the fraud"—although the level of particularity required "will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (cleaned up).

**DISCUSSION**

Defendants seek to dismiss the three fraud claims for similar reasons. Defendants contend that the Complaint is insufficiently detailed to meet Rule 9(b)'s heightened pleading standard because Plaintiffs have not explained (1) the substance of the alleged misrepresentations, (2) how Plaintiffs relied upon the alleged falsehoods, and (3) what role each Defendant played in the fraud. (Dkt. 22 ¶ 2).

**I.  Common Law Fraud Claims**

To make a prima facie case for fraudulent misrepresentation under Illinois law, the Plaintiffs must show: (1) a false statement of material fact; (2) a defendant's knowledge that the statement was false; (3) a defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) the plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, N.E.2d 584, 591 (1996).

Defendants first point out that there is no "actual substance" describing their alleged misrepresentations. (Dkt. 22 ¶ 2). To properly plead fraud, Plaintiffs need "the time, the place, and the content of the misrepresentation." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (finding that this requirement includes the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.) (internal quotations omitted).

Though Plaintiffs plead that the dehumidifiers had substantial problems, they do not allege facts establishing how the dehumidifier was misrepresented to them. According to Plaintiffs, Defendants misrepresented to UL that their products had passed certain flammability test so that Defendants could procure unwarranted certifications. (Dkt. 1 ¶¶ 100, 142). But at no point do

5

Plaintiffs indicate when or in what form these misrepresentations occurred. They also do not allege, with sufficient specificity, who at the companies misrepresented the safety standards to UL. Plaintiffs seem to conflate the length of their complaint (it is 266 pages) with its substance. (Dkt. 24 ¶ 2). Rule 9(b) is more concerned with the specific details of the alleged fraud *as it relates to Plaintiffs' case* than a history of Defendants' companies.

Next, Defendants rightly point out that the Complaint is vague regarding how Plaintiffs relied upon Defendants alleged falsehoods. "Under Illinois law, justifiable reliance exists when it was 'reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation.' " *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012); *See Teamsters Loc. 282 Pension Tr. Fund v. Angelos*, 839 F.2d 366, 371 (7th Cir. 1988) (citations omitted) (writing that "the crucial question is whether the plaintiff's conduct was so unreasonable under the circumstances and 'in light of the information open to him, that the law may properly say that this loss is his own responsibility'). "In the common law tort of fraudulent misrepresentation, the causal link between the wrongdoer and the damage to the plaintiff is provided by the concept of reliance." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 161 (2002) (quoting Restatement (Second) of Torts § 546, cmt. a (1977)). This causal link also requires a showing of proximate cause. *See Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1036 (Ill. App. Ct. 2014) (affirming dismissal of a fraudulent misrepresentation claim because "plaintiffs failed to adequately allege proximate cause").

The problem with the Complaint is that Plaintiffs neither allege that they saw or read anything about the UL standards, nor that they relied on any specific misrepresentation by any of the Defendants. Plaintiffs do not even estimate when or where they acquired their dehumidifier. The most specific the Complaint gets about any tangible misrepresentation is claiming that "Gree

China and Gree Hong Kong made these false and misleading representations knowing that UL was unable to independently conduct burn/flame resistance testing…" (Dkt 1. at ¶ 94). This leaves the Court to guess as to when, how, and to whom Defendants made these misrepresentations. The Court cannot find reliance when there are no facts to indicate what Defendants' specific misstatement was and when it occurred. Accordingly, Plaintiffs have not met the Rule 9(b) standard for the reliance element.

Finally, Plaintiffs fail to provide "fair notice" to each Defendant about their role in the alleged fraud, which is "the most basic consideration underlying 9(b)." *Rocha*, 825 F.3d at 911. When a "complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (internal quotations omitted). ("[T]he plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme."); *see Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (rejecting complaint that "lumped together" multiple defendants because the complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity"). A plaintiff undercuts the point of Rule 9(b)'s heightened standard when he does not carefully identify each Defendant's role in an alleged fraud. *See Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) ("Rule 9(b) can most effectively be confined to its proper domain when we remember that its purpose is to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading.").

At best, Plaintiffs provide a faint sketch of the five Defendant's roles in the scheme. In fact, the Complaint barely mentions MJC's role at all. If anything, the allegations imply that the Gree

companies misrepresented *to MJC* that the dehumidifiers were safe. (*See* Dkt. 1 ¶ 87). In the portions that do mention MJC, Plaintiffs highlight their role in reporting the alleged wrongdoing by the three Gree companies to the federal government. (Dkt. 1-1 at 13–14). Indeed, Plaintiffs offer not one case in their Response to Defendants' Motion to explain how their description of the fraud is sufficient under Rule 9(b). Without these details, Plaintiffs have failed to reasonably notify Defendants of their role in the fraud. Accordingly, the Court dismisses Count V.

Much of the above analysis also applies to Plaintiffs' fraudulent concealment claim. To state such a claim, "a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Wigod*, 673 F.3d at 571 (citing *Weidner v. Karlin*, 932 N.E.2d 602, 605 (2010); *Connick*, 675 N.E.2d at 593 (1996). A duty to disclose may arise under Illinois law if the defendant makes "an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009) (citations omitted). A half-truth is a disclosure that is misleading because it omits important information. *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 149 (N.D. Ill. 2005).

Here, Plaintiffs provide insufficient details to satisfy the heightened Rule 9(b) pleading standard. The Complaint provides no facts as to what, if any, "affirmative statement" any of Defendants made that was misleading. At best, Plaintiffs *imply* that Gree China and Gree Hong Kong provided faulty information to procure their UL certification. But even if this allegation were pled with sufficient particularity, the Complaint still falls short because there are no facially plausible allegations of reliance. Accordingly, the Court dismisses the fraudulent concealment claim. The Court dismisses Count IX without prejudice.

## II. Statutory Fraud Claim

Defendants also move to dismiss Plaintiffs statutory fraud claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). To state a claim under the ICFA, a plaintiff must show: (1) a deceptive act or practice by a defendant; (2) a defendant's intent that the plaintiff relies on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). In federal court, "a complaint made pursuant to the ICFA must be pled with the same specificity as that required under common law fraud." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017) (quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005)).

Plaintiff Joanna Sheely's claim fails on its face because she is seeking damages for a loss of consortium. (Dkt 1 ¶ 249). When a plaintiff is a private party, as here, "an action brought under the ICFA requires the plaintiff to show he suffered actual pecuniary loss as a result of the defendant's violation of the act." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Sheeley is not claiming such loss. Consequently, Count IX is dismissed as to Sheeley.

As for the other two Plaintiffs, the problem with their allegations lies with the proximate cause requirement. Under Illinois law, a court may not infer proximate cause. *Clark v. Experian Info. Sols., Inc.*, 256 F. App'x 818, 822 (7th Cir. 2007). In "a case alleging deception under the [Consumer Fraud] Act, it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, in some manner, deceived by the misrepresentation." *Experian Info. Sols., Inc.*, 256 F. App'x at 821 (citation omitted); *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (2009) (holding that "the plaintiff must actually be deceived by a statement or omission

9

that is made by the defendant" such that "[i]f a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause."). Moreover, in *Haywood v. Massage Envy Franchising, LLC*, the Seventh Circuit explained that for an ICFA claim to satisfy the Rule 9(b) pleading requirement, a plaintiff must "cite a specific deceptive representation that cause[s] [the plaintiff] to pay for something she did not receive." 887 F.3d 329, 334 (7th Cir. 2018).

Here, Plaintiffs do not allege that they saw anything relating to Defendants' alleged misrepresentations. They also do not explain how or by what means they acquired the deficient dehumidifier that caused the fire. Without these details, it is unclear how Defendants deceived Plaintiffs. While it is possible that with more information around their acquisition of the dehumidifier, they could show proximate cause, the Complaint is insufficientl to meet Rule 9(b)'s heightened standard. Accordingly, Count VI is dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [22] is granted. Plaintiffs are granted leave to amend their Complaint consistent with this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: November 18, 2024